IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABBOTT LABORATORIES, an Illinois Corporation, )<br><br>Plaintiff, )<br><br>v. )<br><br>MYLAN PHARMACEUTICALS, INC., a West Virginia Corporation, )<br><br>Defendant. ) | Case No. 05 C 6561<br><br>Judge Virginia M. Kendall |

MEMORANDUM OPINION AND ORDER

Plaintiff Abbott Laboratories, Inc. ("Abbott") brings this action against Defendant Mylan

Pharmaceuticals, Inc. ("Mylan"), alleging patent infringement under 35 U.S.C. §271(e)(2).

Defendants move to dismiss the complaint for lack of personal jurisdiction or, in the alternative, to

transfer the case on the basis of convenience to the Northern District of West Virginia. Because this

district has general jurisdiction over Mylan, and because interests of justice and convenience of the

parties do not warrant transfer to West Virginia, the Court denies the motion.

Facts

On a motion to dismiss under Rule 12(b)(2), the Court takes all well-pled facts in the

complaint as true. *Pickrel v. City of Springfield,* 45 F.3d 1115, 1117 (7th Cir. 1995). The following

facts are drawn from Abbott's complaint ("Complaint at ¶__").

Abbott holds two patents for Sodium Hydrogen Divalproate Oligomer, Patent No. 4,988,731

and Patent No. 5,212,326, each of which is set to expire on January 29, 2008. Complaint at ¶ 7-9.

On August 4, 2000, the Food and Drug Administration ("FDA") approved Abbott's New Drug

Application for Depakote, a trademarked product. *Id.* at ¶ 6. After the FDA approved Depakote, the FDA listed the drug on the "Approved Drug Products with Therapeutic Equivalence Evaluations" list and associated the two patents with Depakote. *Id.* at ¶¶6,11.

On April 12, 2005, Mylan notified Abbott that it had filed an Abbreviated New Drug Application ("ANDA") with the FDA to make a generic equivalent of Depakote. *Id.* at ¶ 12-13. On October 5, 2005, Mylan notified Abbott that Mylan had modified its ANDA to include a "Paragraph IV" certification, in which Mylan challenged the validity and/or enforceability of Abbott's two patents for Depakote, as permitted by 21 U.S.C. §355(j)(2)(A)(vii)(IV). *Id.* at ¶14-15.

By statute, filing a Paragraph IV certification as part of an ANDA is an act of patent infringement. *See* 35 U.S.C. §271(e)(2). Once a patent holder has received notice that a Paragraph IV certification has been filed that implicates one or more of its patents, the patent holder has 45 days in which to file suit for patent infringement or the ANDA will be approved immediately and the patent protection will be lost. *See* 35 U.S.C. §271(e)(5); 21 U.S.C. 355(j)(5)(B)(iii). On November 18, 2005 Abbott filed two suits for patent infringement: one in the Northern District of West Virginia, where Mylan has its corporate headquarters, and one in the Northern District of Illinois, where Abbott has its corporate headquarters. Mylan has moved this Court to dismiss the case before it for lack of personal jurisdiction or, in the alternative, to transfer the case to West Virginia where the other suit is pending. Abbott has moved the court in West Virginia to stay the proceedings before it pending resolution of the motion before this Court.

## Standard

The party seeking to establish jurisdiction bears the burden to make a *prima facie* showing that the forum has personal jurisdiction over the defendant. *Euromarket Designs, Inc. v. Crate &*

*Barrel Ltd.*, 96 F. Supp. 2d 824, 833 (N.D. Ill. 2000); *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). When deciding a matter of jurisdiction, a court may look to affidavits and exhibits submitted by each party. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987), *superceded on other grounds*. Because this case alleges patent infringement, the Court's analysis of personal jurisdiction is guided by Federal Circuit law rather than Seventh Circuit law. *Coolsavings.com, Inc. v. IQ. Commerce Corp.*, 53 F. Supp. 2d 1000, 1002 (N.D. Ill. 1999) *citing 3D Systems, Inc. v. Aarotech Labs., Inc.*, 160 F. 3d 1373, 1377 (Fed. Cir. 1998).

A federal district court applies the personal jurisdiction rules of the forum state. *3D Systems*, 160 F.3d at 1376. The Illinois long-arm statute permits courts to assert personal jurisdiction over a non-resident defendant on any basis permitted by the Illinois and the United States constitutions. *See* 735 ILCS 5/2-209; *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). When analyzing personal jurisdiction under Illinois law, there is no substantive difference between the due process limitations on personal jurisdiction set forth by the US Constitution and by the Illinois Constitution. *Hyatt Int'l. Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002).[1]

A plaintiff demonstrates personal jurisdiction over a non-resident defendant through a two-part inquiry: (1) the state's long-arm statute permits personal jurisdiction over the defendant, and (2) that jurisdiction complies with due process. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001). Illinois' long-arm statute permits jurisdiction over a non-resident defendant in two ways.

---

[1]Although the Seventh Circuit does not hear appeals from cases involving allegations of patent infringement, the Seventh Circuit has addressed the legal parameters of personal jurisdiction in Illinois with far greater frequency than the Federal Circuit. This Court will look to Seventh Circuit law as persuasive authority, particularly in the area of general jurisdiction.

If the defendant's contacts with the forum state are the same contacts as those at issue in the suit, the defendant may be subject to specific jurisdiction. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.* 148 F.3d 1355, 1359 (Fed. Cir. 1998)*; Graco, Inc. v. Kremlin, Inc.*, 558 F. Supp. 188, 191-92 (N.D. Ill. 1982). If the defendant's contacts with the forum state are not the same contacts as those giving rise to the suit, the plaintiff must meet a higher burden and show that the plaintiff has "continuous, permanent, ongoing and systematic" contact with a forum. *See LSI Indus., Inc. v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1375 (Fed. Cir.2000); *Milligan v. Soo Line R.R. Co.*, 775 F. Supp. 277, 279 (N.D. Ill. 1991). This contact, also known in Illinois as "doing business" in the state of Illinois, will make the defendant amenable to all suits in the state, including suits arising from conduct that did not occur in the forum state. *Milligan*, 775 F. Supp. at 279.

If Illinois has personal jurisdiction over a non-resident defendant, the assertion of jurisdiction must comport with "fair play and substantial justice" - that is, a showing that a suit in the state against the defendant would be fair and reasonable. *Red Wing Shoe*, 148 F.3d at 1358-59**.** This second stage has also been described as a showing that the defendant's conduct in the forum state is such that the defendant should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980).

In this case, Abbott does not allege that Illinois has specific jurisdiction over Mylan. The issue giving rise to this suit is Mylan's Paragraph IV ANDA, the filing of which triggered a statutory right to sue for patent infringement. *See* 21 U.S.C. §355(j)(2)(A)(vii)(IV). Mylan has not yet taken any action that normally would constitute infringement, such as the manufacture or sale of the infringing product; rather, the statute governing ANDAs specifically creates a "highly artificial" statutory act of patent infringement at the moment of Paragraph IV filing. *See* 35 U.S.C. §271(e)(2);

*Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 678 (1990) (statute intended to create a "highly artificial" act of patent infringement to allow subject matter jurisdiction prior to the sale of the generic drug). No part of the preparation of the ANDA or the filing the ANDA took place in Illinois, and there has been no other injury to Abbott, so there is no basis for asserting specific jurisdiction over Mylan.

Abbott instead has sued Mylan in Illinois under principles of general jurisdiction, providing evidence that Mylan is "doing business" in Illinois to the extent that it has such systematic and continuous contact with Illinois that it may be sued in this forum for any activity, including activities that are not connected to Illinois.

Doing Business

There is no all-inclusive test for determining whether a non-resident defendant has such systematic and continuous contact with the forum state as to subject it to general jurisdiction. *See Graco*, 558 F. Supp. at 192. Courts typically have looked to the presence of officers, persons, licenses, or sales activities within Illinois as evidence of systematic contact. *See Milligan*, 775 F. Supp. at 279-80 (discussing test); *Graco*, 558 F. Supp. at 192 (relying on volume of sales). Although courts typically look to these factors, Illinois requires an independent determination in each case of whether, on the basis of all the circumstances, it would be fair to subject the defendant to jurisdiction here. *Alderson v. Southern Co.*, 747 N.E.2d 926, 941 (Ill. App. Ct. 2001).

Abbott concedes that Mylan does not have a physical office or agent in Illinois, as verified via affidavit attached to Mylan's Motion to Dismiss. Abbott relies on five different types of contact that Mylan maintains with Illinois: Mylan's volume of sales and percentage of revenue in Illinois,

Mylan's ongoing contracts with companies in Illinois, an Illinois distribution license maintained by Mylan, Mylan's informational website presence, and Mylan's amenability to prior litigation in this district.

Abbott's primary evidence that Mylan has systematic and continuous contact with Illinois are figures obtained from Mylan's documents showing that Mylan distributed substantial quantities of pharmaceuticals to wholesalers and retailers in Illinois, and gained substantial revenues from those sales. Abbott provides information about sales revenue both in absolute monetary terms and as a percentage of the overall revenues of the company and of the company's parent.[2] The revenue from sales in Illinois is substantial and consistent over the five years prior to the suit. Distribution of a defendant company's products in Illinois in sufficient quantities, and with substantial revenues, may subject a non-resident defendant to general jurisdiction. *See Graco,* 558 F. Supp. at 192 (finding that defendant was "doing business" by shipping a large percentage of its equipment through its Illinois subsidiary); *see also Connelly v. Uniroyal, Inc.*, 389 N.E.2d 155, 160 (Ill. 1979) (directing products to Illinois "on a regular basis and in substantial numbers" sufficient to create general jurisdiction).

Illinois courts have not created a consistent standard as to the necessary showing of volume of sales or revenues before exercising general jurisdiction over a non-resident defendant. Unfortunately, most courts have opted for general descriptions of sufficiency rather than specific data. *See Graco*, 558 F. Supp. at 192 ("large percentage" sufficient to support general jurisdiction); *Connelly*, 329 N.E.2d at 406 (jurisdiction appropriate when product came to Illinois "on a regular

---

[2]As portions of these briefs are subject to an agreed Protective Order and were filed under seal, the Court does not refer to specific information or numbers submitted by the parties. The Court considered all relevant confidential information submitted by the parties, but references the submitted data only generally. *See Pepsico, Inc. v. Redmond*, 46 F.3d 29, 30 (7th Cir. 1995) (directing district courts to prepare opinions for general circulation while referencing protected materials indirectly).

basis and in substantial numbers"); *McGill v. Gigantex Technologies Co., Ltd.,* 2005 WL 3436403, *3 (N.D. Ill. Dec. 12, 2005) ("small percentage" not sufficient). In those cases that did provide numerical figures, however, Mylan's volume of sales exceeds the volumes that have been sufficient to support general jurisdiction in the past. *See, e.g., Hubbell,* 232 F.3d at 1375 ("millions of dollars of sales" conducted "over the past several years" and "broad distribution network" sufficient for general jurisdiction); *Milligan,* 775 F. Supp. at 280-81 (Illinois sales totaling 3-5% of annual company revenues sufficient for general jurisdiction). The Court finds that Mylan's volume of sales, and the revenues derived from those sales, constitute substantial and continued contact with Illinois supporting a finding of general jurisdiction in this forum.

It is not relevant whether the sales went through a distributor before reaching Illinois; general jurisdiction extends to both direct and indirect sales into the forum state. *See Graco,* 558 F. Supp. at 193 ("Because [defendant] receives substantial economic benefit from its regular activity within the state, it can be said to be 'doing business' here even though its dealings here are indirect."); *Connelly,* 389 N.E.2d at 405 ("A manufacturer's economic relationship with a state does not necessarily differ in substance, nor should its amenability to jurisdiction necessarily differ, depending on whether it deals directly or indirectly with residents of the state"); *see also Giotis v. Apollo of the Ozarks, Inc.,* 800 F.2d 660, 667 (7th Cir. 1986) ("A seller at the head of a distribution network thus satisfies the requisite forseeability of due process where it 'delivers its products into the stream of commerce with the expectation that [these products] will be purchased by consumers in the forum state'"). Abbott has shown sufficiently, via Mylan's own documents, that a substantial percentage of Mylan's revenues come from sales to the state of Illinois.

Mylan does not object to the veracity of Abbott's evidence of sales and revenue. Rather, Mylan argues that Abbott's evidence does not support general jurisdiction, because a showing of general jurisdiction in the absence of specific jurisdiction places a higher burden on the plaintiff. In support of its position, Mylan relies on *Bearry v. Beech Aircraft Corporation*, a case from the Fifth Circuit in which the court denied general jurisdiction over an action in which it did not have specific jurisdiction, despite the plaintiffs' evidence of substantial sales into the forum state. 818 F.2d 370, 374-5 (5th Cir. 1987). Mylan draws from *Bearry* the notion that general jurisdiction in the absence of specific jurisdiction requires additional evidence besides sales and revenues, such as contract negotiation within the forum or subsidiaries. The Court finds *Bearry* to be unpersuasive, as binding case precedent within this circuit and this state has found general jurisdiction on the basis of sales and revenues in sufficient quantities, and the Court finds that those quantities have been surpassed by Mylan in this case.

Additionally, Abbott has addressed the concerns raised in *Bearry*, and similar concerns raised in cases in this district, by providing supporting evidence of Mylan's other contacts with this forum to supplement its evidence of sales and revenues. Those cases in Illinois that have declined to exercise general jurisdiction in Illinois on the basis of the volume of sales did so because the non-resident defendant had no other contact with the forum state. *See McGill*, 2005 WL 3436403 at *3 (sales totaling less than 3% of defendant's total revenues insufficient to support general jurisdiction without other evidence); *Hot Wax, Inc. v. Stone Soap, Inc.*, 1999 WL 183776, *4 (N.D. Ill. Mar. 25, 1999) (where volume of sales small, court will exercise jurisdiction only if defendant also targeted advertisements). As discussed in the following section, Abbott provides additional evidence of other

contacts between Mylan and Illinois to bolster its contention that general jurisdiction in this case is appropriate.

<u>Supporting information</u>

Abbott supports the evidence of substantial sales and revenues from Illinois with several additional contacts between Mylan and Illinois. While each of these pieces of evidence standing alone might not subject Mylan to general jurisdiction in Illinois, they support the Court's finding that Mylan has conducted business in Illinois to such an extent that the Court may infer that Mylan has availed itself of the laws of Illinois and that it would be fair to permit them to be sued in this state.

1 <u>License</u>. Mylan holds two current "Licensed Drug Distributor" licenses from the Illinois Department of Financial and Professional Regulation. Illinois requires any "person, partnership, corporation or business firm engaging in the wholesale distribution of human prescription drugs within [Illinois]"to receive a license from this department. Wholesale Drug Distribution Licensing Act, 225 ILCS 120/5 (defining scope of the act). Mylan has held the public licenses since 1999. Abbott Mot. in Opp., Ex. C.

A license from the Illinois Secretary of State, which may then act as an agent for service of process on a defendant, traditionally establishes a state's jurisdiction over the license holder. *See Polansky v. Anderson*, 2005 WL 3557858 at *4 (N.D. Ill. Dec. 29, 2005). Although Mylan's licenses come from an Illinois regulatory agency, and do not automatically establish general jurisdiction, they do represent an ongoing contact with the state of Illinois, and support an inference that Mylan intended to do business within the state.

2. <u>Mylan's Website</u>.  Mylan maintains a national website for informational and advertising purposes only.  The website does not sell any of Mylan's products or conduct business transactions.  However, the website has interactive components, as customers may submit inquiries to Mylan for additional information about Mylan products.  Abbott argues that the website should be viewed in conjunction with the other evidence offered in support of jurisdiction, as supporting evidence that jurisdiction over Mylan in Illinois is proper.

The seminal case discussing the Internet and personal jurisdiction, *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*, held that websites should be examined on a "sliding scale" when determining personal jurisdiction. 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). In cases where a defendant clearly does business over the Internet, including entering into contracts, personal jurisdiction is proper. *Id.*  On the other side, if the defendant's website is completely passive and allows no interaction with a customer, personal jurisdiction is not proper. *Id.*  The "middle ground" set forth in *Zippo*, which best describes Mylan's website, "is occupied by interactive Web sites where a user can exchange information with the host computer" but cannot purchase products; these sites should be evaluated on a case-by-case basis. *Id.*, *see also Neomedia Techs., Inc. v. AirClic, Inc.,* 2004 WL 848181 at *4 (N.D. Ill. Apr. 16, 2004) (applying the *Zippo* test to personal jurisdiction analysis in Illinois).

A hybrid website alone will  not support general jurisdiction over a defendant corporation. *Infosys Inc. v. Billingnetwork.com, Inc.*, 2003 WL 22012687 at *4 (N.D. Ill. Aug. 23, 2003).  But a website can form part of the basis for general jurisdiction, and two recent cases in this district exercised personal jurisdiction over a non-resident defendant after viewing a hybrid website in connection with the company's other contacts in the state.  *See Publications Int'l, Ltd. v.*

10

*Burke/Triolo, Inc.*, 121 F. Supp. 2d 1178, 1183 (N.D. Ill. 2000) (finding general jurisdiction on basis of a hybrid interactive website plus extensive distribution of materials within Illinois); *George S. May Int'l. Co. v. Xcentric Ventures, LLC*, 409 F. Supp. 2d 1052, 1059-60 (N.D. Ill. 2006) (listing sales and solicitations, in addition to a hybrid website, and finding general jurisdiction over non-resident defendant). While Mylan's website alone might not support personal jurisdiction, the presence of the website adds weight to the Court's finding that general jurisdiction in this case is proper.

       3. <u>Contracts in Illinois</u>.  Abbott and Mylan agree that Mylan has pending contracts with approximately twenty separate entities shipping Mylan's products into Illinois, or in some cases repackaging Mylan products at their plants in Illinois.  Seven of these companies have their principal places of business in Illinois.  Abbott argues that these contracts form an additional basis for finding that Mylan has a continuing relationship with parties in the forum state.

       Mylan responds that the contracts do not support personal jurisdiction because defendants are not subject to jurisdiction in a forum based on contracts with out-of-state entities who did business in the forum, citing *Red Wing Shoe.* 148 F.3d 1355.  In *Red Wing Shoe*, the state of Minnesota did not have personal jurisdiction over a non-resident defendant that licensed its product to 34 companies doing business in the state.  Mylan's reliance on *Red Wing Shoe* is misplaced, however, because the court in *Red Wing Shoe* specifically noted that none of the 34 licensees were incorporated in the forum state or had their principal places of business in the state.  *Id.* at 1357-58.  Abbott has alleged, and Mylan has conceded, the seven of the main contracts identified by Abbott for distribution in Illinois are companies that have their principal places of business within the forum state.

4. <u>Prior Litigation within this District</u>. Finally, Abbott raises Mylan's history as a defendant in this court, and its decisions in the past not to contest personal jurisdiction, as further evidence that general jurisdiction over Mylan is proper. Neither party offers case law on this point. Unlike the evidence offered by Abbott with respect to the sales, the website, the license, and the contracts, prior litigation within the state of Illinois does not support a finding of general jurisdiction. The Court has reviewed the cases in this district in which Mylan is or was a defendant, none contain a finding as to whether Illinois has general jurisdiction over Mylan. This Court will not second-guess the strategy of Mylan's attorneys to accept service in those particular cases. However, as discussed below, the fact that Mylan has litigated cases by consent in this forum in the past, including cases of ANDA patent infringement brought by Abbott, weakens Mylan's argument that litigation in this forum is inconvenient.

Due Process

Once a movant has shown that a non-resident defendant has systematic and continuous contacts with Illinois to support general jurisdiction, the Court must look to whether the decision to exercise jurisdiction comports with due process. Under the Due Process Clause of the Fourteenth Amendment, an Illinois court may exercise jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). Once a plaintiff has demonstrated that there are minimum contacts, the burden shifts to the defendant to show "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

12

In determining the reasonableness of jurisdiction, the Federal Circuit looks to five factors: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Electronics For Imaging,* 340 F.3d at 1352. In this case, Mylan has not demonstrated an unreasonable burden from litigating this case in Illinois. The burden on Mylan to litigate in Chicago is greater than it would be if this case remained in West Virginia, but Mylan has litigated other major cases in this district on prior occasions. Illinois has an interest in protecting its citizens from patent infringement, and Abbott certainly has an interest in obtaining relief from patent infringement. Neither the interstate judicial system nor the shared interest of the states will be affected by assertion of jurisdiction in this case, because all states are governed by the same body of patent law. *See id.* (addressing the same five factors in a patent infringement cases).

### Transfer of Venue

As an alternative to dismissal for lack of personal jurisdiction, Mylan requests that this Court transfer the action under 28 U.S.C. §1404(a) to the Northern District of West Virginia, Mylan's home district and the site of the parallel suit filed by Abbott. Mylan offers two main arguments in support of its request to transfer the instant action to West Virginia: first, it would be more convenient to conduct the litigation in West Virginia; and second, the case before the Court is duplicative of the case before the court in West Virginia. Because the Court does not find that this case merits a transfer for the convenience of the parties, and because the Court respects Mylan's need to file duplicate litigation due to statutory ambiguity, the request to transfer is denied.

13

A party may request that a court transfer a case to another venue "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. §1404(a). In patent cases, courts normally give great weight to the plaintiff's choice of forum when a defendant requests a transfer of venue. *Hollyanne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 n.2 (Fed. Cir. 1999). Mylan argues that it is more convenient to the witnesses to have this case transferred to the Northern District of West Virginia, where another identical action is presently pending. The Court agrees that this action would be more convenient for Mylan if it were pending in West Virginia - Mylan's home district. However, the action would be more convenient for Abbott if it were to proceed before this Court - Abbott's home district, because the evidence supporting the validity of Abbott's patent will involve documents and witnesses from Abbott's corporate headquarters, located in the Chicago area. In arguing for the relative convenience of West Virginia, Mylan relies primarily on the presence of the documents and witnesses pertaining to the preparation of the ANDA at its corporate headquarters. In a case where all of the witnesses of the defendant will be its employees, however, the location is not as important a factor as it would be if the witnesses were not under the control of the defendant. *Id.* at 1307 n.2.

Additionally, Mylan's argument that its convenience outweigh's Abbott's convenience loses persuasiveness in light of the fact that Mylan has litigated two different ANDA/patent infringement suits, for different pharmaceuticals, against Abbott in this forum, without contesting personal jurisdiction. The considerations of convenience in this case balance one another; Mylan has not met its burden to show that transfer of the case to West Virginia would be more convenient for the parties and witnesses than litigation here. *See generally Abbott Laboratories v. Zenith Laboratories, Inc*,

1995 WL 117984 (N.D. Ill. Mar. 16, 1995) (denying transfer of venue to defendant's district in patent infringement case arising out of an ANDA).

Second, Mylan requests that this Court dismiss this case on the grounds that Abbott should not be permitted to bring parallel suits in different jurisdictions. While the Court is troubled by the apparently increasing number of "protective" suits filed in ANDA-related patent infringement actions such as this case, the Court cannot fault Abbott for its litigation strategy in the face of an ambiguous statute that remains devoid of court interpretation. Abbott does not seek double recovery or have any desire to litigate parallel suits, and has requested a stay in the suit pending in the Northern District of West Virginia. Patent holders have a strict statutory 45-day window in which to file suit after the patent holder receives notice that a generic company has filed an ANDA. *See* 21 U.S.C. 355(j)(5)(B)(iii). The statute is silent, and the courts have not clarified, whether the patent holder loses its right to sue for patent infringement in the event its suit is dismissed for lack of personal jurisdiction after the 45-day period has expired.

Between service and briefing of a motion to dismiss for lack of personal jurisdiction, it would be nearly impossible for a court to deliver a ruling within 45 days so as to permit a patent holder to file another suit. Indeed, a generic manufacturer defendant in this circumstance will likely make the strategic decision to delay filing a motion for lack of personal jurisdiction as long as possible, in the hopes that the 45-day period will expire before the action is dismissed on personal jurisdiction grounds. Therefore, patent holders are stuck between a jurisdictional rock and hard place: file suit in the forum of choice but risk losing patent protection if the suit is dismissed for personal jurisdiction, or file suit in the only known safe forum and incur all the inconvenience of litigating

15

the matter in a distant location. However, as the Court finds that it has general jurisdiction over the defendant in this case, there is no need to reach this issue.[3]

Conclusion

Abbott has established a *prima facie* case that Mylan maintains systematic and continuous contact with Illinois, through its sales and revenues in Illinois, supported by its contractual connections, Illinois licenses, and interactive website. Mylan has not shown that it would be unreasonable to bring Mylan into court here, or that there it would be more convenient for the parties or witnesses to transfer this case to West Virginia. Therefore, the Court denies the motion to dismiss for lack of personal jurisdiction or, in the alternative, transfer the matter to West Virginia.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Dated: March 28, 2006

---

[3] It is possible that 28 U.S.C. §1631 would solve this problem by permitting a court to transfer an action filed by a patent holder such as Abbott for lack of personal jurisdiction. Section 1631 would preserve the original date of filing in the improper jurisdiction, allowing patent holders to preserve their right to sue, while also allowing courts to ensure that the action moved forward in the appropriate forum. However, the circuits have split over whether §1631 applies to personal jurisdiction (as opposed to subject matter jurisdiction) and neither the Seventh Circuit nor the Federal Circuit have addressed the issue. *See Carpenter-Lenski v. Ramsey*, No. 99-3367, 2000 WL 287651 at *2 (7th Cir. 2000) (acknowledging the split in authority over this issue).